EL CAMPO LIGHT, ICE & WATER COMPANY ET AL. v. WATER & LIGHT COMPANY OF EL CAMPO ET AL.

Decided December 19, 1910.

**1.—Temporary Injunction—Mistake as to Existence—Effect.**

The recital—under a misapprehension of fact—in an agreement for the postponement of a hearing on an application for injunction, that a temporary injunction had theretofore been issued and that the same should remain in force and effect until the case was heard on its merits, could not operate as a restraining order or temporary injunction when no such order had in fact been made by the judge, nor prevent a defendant from appealing from an order granting the writ when it was subsequently made by the judge.

**2.—Injunction—Declaring Bonds Due—Default on Interest—Offset.**

A petition for injunction alleged, in effect, that, while the plaintiff did in fact owe the defendant the amount of interest accrued on certain bonds of the plaintiff held by the defendant, the defendant owed the plaintiff a sum which was more than sufficient to offset the interest and that therefore nothing was owing to defendant by plaintiff, but notwithstanding this, the defendant was about to declare all of said bonds due and payable immediately because of default in the payment of interest thereon, although said bonds according to their terms would not otherwise mature for twenty years. Held, said petition was sufficient as against a general demurrer. And the fact that the plaintiff held a good and sufficient bond to secure it in the payment of the amount owing by the defendant, would be no reason why the injunction should not issue to prevent the threatened action of the defendant in declaring the bonds due and payable immediately.

**3.—Injunction—Prevention of Injury—Inadequate Legal Remedy.**

In courts administering both law and equity, as in ours, the rule denying injunction when there is a remedy at law should not be applied as rigidly as at common law, where the issuance of the writ was in a manner an invasion of the jurisdiction of another tribunal. A threatened unlawful violation of the rights of another should be prevented in its incipiency by injunction, instead of allowing the injury to be inflicted and then leaving the party to his legal, but often inadequate, remedy by action for damages.

**4.—Injunction—Debt—Offset.**

In an action for injunction to restrain the collection of interest on bonds of the plaintiff held by the defendant, pleading considered and held sufficient to require the issuance of the writ to prevent any attempt to collect said interest

until such time as the amount of the interest should exceed the amount of an indebtedness due by defendant to plaintiff.

### 5.—Same—Failure to Give Bond—Practice.

The failure of the judge granting an injunction to fix the amount of bond which the petitioner should give before the writ should issue, and the failure of petitioner to give a bond, is not necessarily such error as will require a remanding of the cause on appeal. The appellate court may require the plaintiff in injunction to give a proper bond as a condition upon which the judgment perpetuating the injunction would be affirmed.

#### ON MOTION FOR REHEARING.

### 6.—Injunction—Application for—Practice.

A judge can not with propriety pass upon special exceptions to a petition for injunction when hearing the same in chambers. At such time the only question before him is whether he should grant the injunction upon the verified pleadings of the plaintiff and the answer and controverting affidavits presented by the defendant.

Appeal from the District Court of Wharton County. Tried below before Hon. Wells Thompson.

*G. G. Kelly* and *Geo. P. Willis*, for appellants.—When a bill for injunction in its entirety fails to show any sufficient ground for the interposition of a court of equity in the exercise of the extraordinary remedy by injunction, it should be dismissed. Lafayette v. Hood, 104 S. W., 853; Beer v. Landman, 88 Texas, 450; Howard v. Randolph, 73 Texas, 454; Stephens, Comptroller, v. Texas & P. Ry. Co., 100 Texas, 177; Grand Chute v. Winegar, 15 Wall., 355; Hunter v. Mathewson, 129 S. W., 749; Rucker v. Campbell, 35 Texas Civ. App., 178; 16 Ency. of Law, p. 353; 5 Pomeroy's Equitable Remedies, sec. 316; High on Injunctions, secs. 28, 444 and 1129; Jones on Mortgages, sec. 1811; 22 Cyc., 797. Where the petition for injunction fails to set out any facts showing that defendant is threatening to, or about to commit, the injury complained of, and fails to allege any facts to show whereby it would sustain irreparable injury if the act complained of were done by defendants, it is insufficient, and subject to general demurrer. Hall v. LaSalle Co., 46 S. W., 862; Holbein v. De La Garza, 126 S. W., 44; High on Injunctions (2d ed.), secs. 7 and 8; 22 Cyc., pp. 757 and 758. The court erred in overruling the fifth special exception to said petition, wherein it is urged that said petition is insufficient in law to show any ground for equitable relief, as prayed for by injunction, because it appears therefrom that the individual stockholders of defendant company made and delivered to plaintiff their bond, in the sum of $6000, whereby they guaranteed plaintiff that the defendant company would put said property and machinery in good condition and working order as soon as practicable, and if plaintiff has sustained the loss and damage as alleged by it, by reason of any portion of said machinery failing to operate, plaintiff has an adequate legal remedy on said bond. Rucker v. Campbell, 79 S. W., 627; Lafayette v. Hood, 104 S. W., 853; 5 Pomeroy's Eq. Rem., sec. 316; 6 Pomeroy's Eq. Rem., sec. 636; High on In-

junctions, secs. 28, 444 and 1129; 16 Ency. of Law, p. 353; Beer v. Lanman, 88 Texas, 450; Turner v. Patterson, 118 S. W., 565; Rucker v. Campbell, 79 S. W., 627; Stephens, Comptroller, v. Texas & P. Ry. Co., 100 Texas, 177. The court erred in overruling the twelfth exception to said petition, that said petition is wholly insufficient in the ninth paragraph thereof, wherein it claims damages for loss of business in the sum of $2000, because the same is too remote and speculative. Alamo Mills Co. v. Hercules Iron Works, 1 Texas Civ. App., 683; Sabine, etc., Ry. Co. v. Joachimi, 58 Texas, 460; Fraser, etc., v. Echo Min., etc., Co., 9 Texas Civ. App., 714; Sabine Tram Co. v. Jones, 43 S. W., 908; Voorhies v. Fry, 52 S. W., 580. .

*N. C. Abbott* and *W. L. Hall,* for appellees.

McMEANS, Associate Justice.—This suit was instituted by appellee, the Water & Light Company of El Campo, on the 29th day of September, 1909, in the District Court of Bexar County, Texas, Fifty-seventh Judicial District, against the appellants, and the West Texas Bank & Trust Company, trustee, alleging, in substance, that the appellee was a private corporation, organized under the laws of Texas, and having its principal office at El Campo, in Wharton County, Texas, and authorized by its charter to manufacture and supply ice, electric light and motor power, and to supply water to the public, etc.

That the appellant, El Campo Light, Ice & Water Company, was a corporation, organized under the laws of Texas, with its principal office at El Campo, Texas, and was by its charter authorized to do and perform the same business as the appellee, until it ceased doing business as hereinafter alleged; that the West Texas Bank & Trust Company was a corporation organized under the laws of Texas, with its principal office and agents located in San Antonio, Bexar County, Texas; that the appellants, W. J. Heffner, Mack Webb, E. L. Carroll, W. Finkelstein, A. Fahrenthold, Jr., and F. J. Hardy, were each residents and citizens of El Campo, in Wharton County, Texas.

That on or about the 19th day of December, 1908, the individual defendants above named owned and controlled all the stock of the defendant, El Campo Light, Ice & Water Company, and were operating an electric light, ice and water plant at El Campo; that on or about said date they contracted with plaintiff to sell to it said plant, with all the property rights and franchises belonging thereto, and that in consideration therefor the plaintiff was to issue its negotiable six per cent twenty-year bonds, in denominations of $1000 each, the payment of which was to be secured by a deed of trust on the said plant and franchises of said plaintiff company; that of said bonds forty-six thereof, aggregating $46,000, were to be delivered to the defendant Light Company in payment for said property, and the balance were to be delivered to and held by the defendant West Texas Bank & Trust Company, as trustee, to be delivered only in payment for improvements to the plant to the extent of eighty per cent of said improvements.

That also, as part of the consideration for said sale and delivery of said plant to plaintiff, the defendant Light Company and the individual defendants were to have all property and machinery put in good condition and working order, including a certain gas producer and gas producer engine which passed by the sale but had not then been installed and was not connected with the machinery; that the said defendants guaranteed that the said gas producer and gas producer engine would develop twenty-five horse power in addition to the power required to run the motor in connection with the amount of coal guaranteed, and that, upon the faith of these promises and agreements, the plaintiff took possession of all of said property and has operated said plant ever since; that, at time of making said contract and delivery of said property, for the purpose of securing the faithful performance of said contract and as a part of said transaction and consideration, each of the individual defendants entered into a bond to plaintiff in the penal sum of $6000, guaranteeing that the defendant Light Company would put all the property and machinery, so by it then used in its plant, in good condition and working order as soon as practicable.

That at the time of said contract and sale a considerable portion of said machinery was needing repairs in order to put it in good condition and working order, and that it was for the purpose of protecting the plaintiff and insuring the making of these repairs that said contract and bond was made; that plaintiff kept and performed its said part of said contract of sale, but that neither the defendant company nor the individual defendants complied with their contract and guarantee to place said machinery in good repair and condition, but wholly failed and refused to do so, and that it therefore became necessary for the plaintiff to do so, which it did at great cost and expenses.

Plaintiff sets out various items of expense alleged to have been incurred by it in repairing said machinery, aggregating the sum of $679.31. It further alleged that between December 19, 1908, and April 1, 1909, plaintiff had expended the sum of $813.60 in making such repairs, the items of which it alleges it was impossible to give at that time; also the sum of $76.10 for expert labor; that the defendant failed to install the gas producer and gas producer engine, which was taken in said trade; that the total cash value of all the property turned over to it by defendant was $30,073, and the actual cost of the said gas producer and gas producer engine, with the cost of installation, freight and motor attached, was $3960.15, making a total value at the time of the sale of the property turned over to plaintiff, the sum of $34,033.15; the value of the gas producer and gas producer engine being eleven per cent of the total value of said property. That the plaintiff paid $46,000 in bonds for the entire property, and therefore it is entitled to a return of eleven per cent of said bonds, or $5290, for failure of that portion of the consideration; that by reason of the failure of defendants to make the repairs it agreed to make on said machinery, and to install and put in running order said gas producer and gas producer engine, it became necessary for plaintiff to expend, and it did expend between

December 19, 1908, and April 1, 1909, the sum of $696.39 more for fuel than it would have been required to do if the said defendants had complied with their contract; that by reason of such failure to comply with their contract on the part of defendants, the plaintiff has been prevented from doing the volume of business and filling the demands made upon its plant that it otherwise could and would have done, and thereby plaintiff has sustained a loss of more than $2000, wherefore it claims damages against them in said sum of $2000.

Plaintiff further alleges that the bonds so issued and delivered to defendant, the El Campo Light, Ice & Water Company, and the individual defendants as stockholders thereof, contained the following provision:

"If default shall be made in the payment of the principal or interest of any of said bonds when the same shall become due, and such default, except in the payment of the principal of this bond, shall continue for a period of three (3) months, the principal of this bond may become immediately due and payable in the manner and with the effect specified in such mortgage or deed of trust."

That the deed of trust given to secure the payment of said bonds contains the following provisions:

"In case default shall be made in the payment of the principal or interest of any of the bonds secured hereby when the same shall become due, and such default, except in the payment of the principal, shall continue for a period of three months, then in every such case the trustee may, and if requested by the holders of twenty-five (25) per cent in amount of the bonds hereby secured and then outstanding shall, declare the principal of all of the bonds hereby secured and then outstanding to be due and payable immediately; and upon any such declaration the same shall become due and payable immediately, anything in this indenture or in said bonds to the contrary notwithstanding; this provision, however, is subject to the condition that if, at any time after the principal of said bonds has been declared due and payable, all arrears of interest upon all such bonds, with interest at the rate of six per cent per annum upon all overdue installments of interest, shall either be paid by the company or be collected out of the mortgaged property before any sale of the mortgaged premises shall have been made, then, and in any such case, the holders of a majority in amount of the bonds hereby secured and then outstanding, by written notice to the company and to the trustee, may waive such default and its consequences, but no such waiver shall extend to or affect any subsequent default, or impair any right consequent therein."

, Plaintiff further alleges, "that the semi-annual interest on the bonds held by the El Campo Light, Ice & Water Company, and the individual defendants, became due and payable on the 1st day of July, 1909, and the same has not been paid; that the said defendants, as plaintiff is informed and believes and therefore alleges, are the owners and holders of said bonds, and the bonds so held by them are the only bonds issued and outstanding; that plaintiff has reason to believe and does believe that the defendant, West Texas Bank & Trust Company, the trustee

named in said deed of trust; will, at the expiration of three months after said interest became due, that is, at or after the 1st day of October, 1909, declare a default in the payment of said interest, and declare the whole of said bonds due and payable immediately; and further alleges that in the event the trustee should not so declare, the defendants, El Campo Light, Ice & Water Company, or the individual defendants, or all of them together, would request the said trustee to so declare the default and the entire principal of said bonds due and payable, and in pursuance thereof the said trustee act, to the great and irreparable injury of this plaintiff, for which it has no adequate remedy at law, and no adequate remedy except the restraining order of this court."

The petition further alleges that the defendant Light Company, or the individual stockholders, are the owners of said bonds, and that they are indebted to the plaintiff in an amount far in excess of the amount due as interest, for the reason theretofore stated, and therefore there is nothing due the defendants, and no right exists to declare a default for non-payment of interest, and that neither the trustee nor any of the defendants has any legal right to declare a default.

Prayer that plaintiff have judgment against each of the defendants, except the West Texas Bank & Trust Company, for the sum of $4265.40, with legal interest and costs of action, and the interest due on bonds held by the defendants, as paid out of said judgment; also for judgment against each of the said defendants, except the West Texas Bank & Trust Company, in favor of plaintiff, directing the delivery to plaintiff of eleven and one-half per cent of the $46,000 of bonds, or, in the event they have sold the said bonds so that they could not be called in and cancelled, that then a personal judgment against said corporation, and the individual defendants, for the face value of the bonds.

Plaintiff further prayed for a temporary writ of injunction, restraining the individual defendants from requesting the trustee, the West Texas Bank & Trust Company, to declare a default of said bonds and deed of trust, or either of them, for non-payment of interest, and for a like injunction against the West Texas Bank & Trust Company from declaring a default of said bonds and deed of trust, or declaring the principal of said bonds to be due and payable, either at the request of the holder of said bonds, or by its own power, under the terms of said deed of trust or bonds, during the pendency of this action, and that on final hearing said injunction be perpetuated.

Upon this petition the district judge in chambers endorsed his fiat ordering the clerk of that court to issue notice to all the defendants to be and appear before him on Monday, October 18, 1909, at 11 o'clock a. m., to show cause why such temporary writ of injunction should not be issued, as prayed for in said petition.

The hearing on this application was postponed by agreement of counsel. In this agreement it was stipulated that the "hearing on the restraining order heretofore issued herein shall be continued to and taken up on the hearing of the merits of the case, and that the said order as now existing shall be in full force and effect until such time

and until the future order of this court." And on the 7th day of December, 1909, the defendants, El Campo Light, Ice & Water Company, and the individual stockholders, filed a joint answer, containing a special exception to the jurisdiction of the court over their persons; also containing a general demurrer and special exceptions to plaintiff's petition; also a general denial, and specially pleading facts under oath tending to negative all the material allegations of each paragraph of plaintiff's petition.

At the same time of filing this answer, defendant El Campo Light, Ice & Water Company, and the individual defendants, filed separate pleas of personal privilege.

On December 20, 1909, the case came up before the District Court of Bexar County, and that court, upon hearing the exception and pleas to the jurisdiction, sustained same, and transferred the case to the District Court of Wharton County.

No further action was taken in this cause until July 15, 1910, when the judge of the Twenty-third Judicial District, in chambers, at Bay City, Texas, heard the motion of appellants to dismiss the plaintiff's petition, and also heard said petition and answer, and the affidavits in support thereof, and rendered judgment overruling said motion, and also overruling the demurrer and exceptions of defendant, and granting said application for injunction. The defendants have appealed.

Counsel for appellee contends that the stipulation in the agreement for postponement of a hearing of the application for injunction, above quoted, operated as a restraining order, and that the subsequent proceedings, after the venue of the action had been changed to Wharton County, was nothing more than a motion to dissolve such injunction, from which an appeal does not lie.

The only order made in the proceedings by the District Court of Bexar County prior to the order changing the venue was one setting a date for hearing of the application for injunction. The only order of either court granting an injunction is the one appealed from. The answer filed by appellants in the District Court of Wharton County was in the nature of a motion to "dismiss the petition for injunction applied for herein and to dissolve the temporary restraining order, alleged in a certain agreement to have been heretofore issued herein." The language in which the agreement was couched was evidently induced by a mistaken belief on the part of all the parties to the agreement that a temporary restraining order had theretofore been granted by the District Court of Bexar County. That no such order was made is shown by the entire record, and that the parties did not intend that the agreement should have the force and effect of an injunction is evidenced by the action of the district judge in granting the temporary injunction appealed from without in any way referring to the supposed former order or to the agreement itself. To this we may add that the appellants in the proceedings in the court below stated in their sworn pleadings that no such order had theretofore been granted and that the language

of the agreement was the result of inadvertence or mistake, and this was not denied by appellee.

Appellant's first assignment of error is as follows: "The court erred in overruling the general demurrer to said bill, because said bill on its face showed no proper ground for the equitable relief prayed for; nor did it allege any facts showing that the defendants were threatening to or about to commit the wrongs complained of in said bill, and also failed to allege any facts to show whereby it would sustain irreparable injury if the acts complained of were done by defendants."

Appellant in its first proposition contends that when a bill for injunction in its entirety fails to show any sufficient ground for the interposition of a court of equity in the exercise of the extraordinary remedy by injunction, it should be dismissed. We concede the accuracy of the principle stated, but can not agree that the bill of appellee was not sufficient as against a general demurrer. The allegations of the bill, which as against the demurrer must be taken as true, are to the effect that while the appellee owes the appellant the amount of interest accrued on the bonds, the appellant owed the appellee a sum for repairs, etc., of the machinery sold, which was more than sufficient to offset the interest and that therefore nothing was due to the appellant, but notwithstanding which, appellee had reason to believe and did believe and charged that appellant would, by reason of the non-payment by appellee of the interest as such, declare all the bonds given for the payment of the plant matured, and cause the trustee to foreclose by sale of the plant.

The second assignment complains of the refusal of the court to sustain appellant's fifth special exception to the petition, wherein it is urged that the petition is insufficient in law to show any ground for equitable relief by injunction, because it appears therefrom that the individual stockholders of the defendant company made and delivered to plaintiff their bond in the sum of $6000, whereby they guaranteed plaintiff that the defendant company would put said property and machinery in good condition and working order as soon as practicable, and that if plaintiff had sustained loss and damage by reason of any portion of said machinery failing to operate, plaintiff has an adequate legal remedy on the bond.

It is true that after appellee had caused the machinery to be put in repair and good working order it could have looked to the bondsmen for reimbursement. But we do not know of any principle of law that would require the appellee to look to the bondsmen alone, and, because of their undertaking, relieve appellant of liability upon its promise to make such repairs. The appellant was primarily responsible to appellee for the cost of repairs, and when it failed to keep its agreement in that regard, and when in consequence the repairs were made by appellee, the appellant bcame responsible and liable to pay to appellee the reasonable cost of the same, and if at that time appellee was due and owing appellant interest upon the bonds in a less sum than the latter was owing the former for repairs, we see no reason why the lesser amount should not have been offset by the larger and payment made in that way. At least,

we see no reason why a refusal to pay the interest on the bonds at a time when the amount of the same was less than the sum alleged by appellee to be due it for repairs, and which was urged in the bill as an offset, should be such a breach of the obligation of the trust deed and bonds to pay the interest semi-annually as would justify the trustee to declare the bonds, which by their terms did not mature for twenty years from their date, to be due and payable immediately. The injury which appellee was seeking by the injunction to avoid was the declaring that the principal of the twenty-year bonds should be due at once, and this it could not have prevented if, in fact, as contended by appellant, recourse could be had only upon the bond given by appellee to guarantee the cost of repairs. An action upon the bond might be an adequate remedy for the collection of the cost of repairs, but not adequate to prevent a declaration of the maturity of the twenty-year bonds pending an action upon the bond. As said in Summer v. Crawford, 91 Texas, 132: "In courts administering both law and equity, like ours, the rules denying injunction when there is a remedy at law should not be applied as rigidly as at common law where the issuance of the writ in equity was, to a certain extent, an invasion of the jurisdiction of another tribunal. If, as here, the appellant shows a clear right to be left in the undisturbed possession of certain property and that such right is about to be invaded without semblance of right by another, such an invasion, on principle, should be prevented in its incipiency by injunction, instead of allowing the injury to be inflicted and then leaving the party to his legally adequate, but in fact very generally inadequate, remedy of an action for damages."

From the pleadings we deduce the following: Bonds in the sum of $46,000, dated December 19, 1908, bearing interest at the rate of six per cent per annum from date payable semi-annually, and secured by a mortgage upon the property and franchise of the Water & Light Company of El Campo, are owned by the appellant. With the exception of $600, the interest has not been paid. The interest accrued and that which will accrue up to January 1, 1911, deducting the payment of the amount above stated, will amount to $4920. The items claimed by appellee in offset to this sum, including the cost of repairs, etc., and the further item of $2000 damages, and the value of the gas producer and gas producer engine "with the cost of installation, freight and motor attached," amount to $8185.65. If all the items stated could be allowed we see no good reason why the appellant should not be enjoined from proceeding to have the bonds declared due and the mortgage securing the same foreclosed until such time as the interest to accrue upon the bonds would equal the amount of appellee's claim, when by process of cancellation the claims of each against the other would be discharged.

But we do not think the petition sufficiently shows that appellee is entitled to charge the value of the gas producer and gas producer engine to appellant, for it is clearly alleged that appellee purchased the same

Vol. LXIII Civil-26.

with the plant from appellant and that the title thereto passed by the sale. Nor is it shown that appellee did not receive the gas producer and engine with the other property purchased, nor are any facts stated to show liability of appellant for their value. The cost of installation was to be borne by appellant but this cost is not stated in the petition separately from the value of the producer and engine, and we are without means to tell what amount this was. For aught that appears in the petition appellee now has the producer and engine in its possession claiming and owning the title by virtue of its purchase. Clearly then the value of the producer and engine should not, in view of this state of the pleadings, be allowed in offset to interest accrued and to accrue. Nor do the facts stated show appellee to be entitled to a cancellation of bonds in the proportion that the gas producer and engine bears to the entire property for which the bonds were given in payment; and inasmuch as there is no allegation of the cost of installation separately from the value of the producer and engine, no basis is stated for an offset of such cost as against the interest. The elimination of these items, leaves the several items above stated, which amount to $4265.40. As before shown, the interest that will have accrued upon the bonds by January 1, 1911, will amount to more than the sum that can be allowed under the pleadings in offset, and we think that the ends of justice will be fully met by preventing a declaration of default of the bonds for any interest that may accrue prior to that time.

Appellee did not execute and file with the clerk of the court below a bond for injunction, nor did the district judge who granted the writ fix the amount of the bond to be executed as a condition precedent to the issuance of the writ. This was error, and appellant's assignment raising the point must be sustained. Revised Statutes, art. 2997. But in the view we take, this error, in our opinion, does not necessitate the reversal of the judgment and remanding the case for a new trial, but this court having the case before it can, when the petition states grounds for relief by injunction, make and enter such orders and judgment as should have been rendered by the court below.

It is therefore the judgment of this court that upon the appellee executing a bond in the sum of $10,000 within fifteen days from the 10th day of November, 1910, payable and conditioned as required by law, to be approved by the clerk of the District Court of Wharton County, the injunction heretofore granted by the district judge in chambers be continued in force in so far as it restrains the appellants from requesting the trustee, the West Texas Bank & Trust Company, from declaring a default of said bonds and deed of trust for non-payment of interest accrued and to accrue on said bonds on or before the first day of January, A. D. 1911, unless the suit now pending in the court below shall be sooner finally determined and in so far as it restrains the said trustee, its officers and agents, from declaring a default because of the non-payment of such interest accrued and to accrue on or before said date, unless said suit shall be finally determined before then. The judgment appealed from, as reformed, is affirmed.

## ON MOTION FOR REHEARING.

Appellant in its motion for a rehearing insists that we pass upon certain assignments of error presented in its brief based upon the refusal of the district judge to sustain certain special exceptions urged by it to plaintiff's petition, and especially the ninth assignment, which complains of the action of the lower court in overruling appellant's special exception to the paragraph of the petition wherein plaintiff claims damages in the sum of two thousand dollars, which it claimed it lost because of its inability to do the volume of business it would have done had appellant made the repairs of machinery it agreed to make. All these exceptions were urged before the judge in chambers, and at a time when the only question properly before him was whether he should grant an injunction upon the verified pleadings of plaintiff and the answer and controverting affidavits presented by defendant. Manifestly, the special exceptions could not have been acted upon except by the court, and could not with propriety have been passed upon by the judge in chambers. The time for such action was not then present. It was upon these considerations that this court did not pass upon said assignments.

Nothing in our opinion should be taken as indicating any conclusion of this court upon the merits of said special exception.

The motion for a rehearing is refused.

*Reformed and affirmed.*